May it please the court. Christopher Bent for Appellant Claire Cheeks who is with me today. This is an appeal from a decision from the lower court to dismiss our excessive use of force claim. The lower court dismissed the excessive use of force claim pursuant to 12b-6 and finding and citing qualified immunity. We amended the attempt to amend our complaint to reassert the excessive use of force claim that was denied. That is the basis for our appeal today. Of course with respect to immunity, you know, there's a couple of issues that I would point out. One of which is there is discretion for the judge to grant immunity in certain cases but it does require a fact-intensive inquiry and for that reason I'd like to go over some of what I think are the salient facts in this case. Going back to August 10th of 2018, Mikel Neal, Ms. Cheeks' son, was traveling on Airport Road. It is our position that he was killed, he died, because of the excessive use of force used by officers Malloy and Jacob. The facts relative to the excessive use of force include the issue surrounding the reason why, the alleged reason why, the officers wanted to stop Mikel Neal. They said that they saw a red light violation, a misdemeanor, a traffic light violation, and that is what initiated the pursuit. The pursuit traveled approximately one mile, less than a mile, and the speeds reached in excess of 90 miles per hour in a residential area, 35 to 45 mile per hour zone. Lots of curb cuts, lots of businesses, people walking up and down the streets. Significant for a number of different reasons, one of which of course goes to the issue of whether or not the force used under the circumstances were proportionate to the red light traffic violation. And when we stop and think about that, if I could real quickly, using a pit maneuver, as alleged in our petition, at the rate of 90 miles per hour is analogous to using a firearm, firing, discharging a firearm in a crowded mall to stop a shoplifter. The force is just disproportionate to the issue that prompts the force. I'm sorry. Counsel, so that time doesn't get away from us here, I'd like to address what might be a more threshold issue. This is something that was touched on in the briefs but maybe not emphasized to much extent. You mentioned the red light. It's my understanding there's an allegation at least that this was outside the officer's jurisdiction. This case comes to us as a 12b6 motion to dismiss and at that stage of the proceedings, a defendant wanting qualified immunity has to show that they're entitled to it on the face of the complaint. This court has held, and I'm going to quote it, an official acting outside the clearly established scope of his discretionary authority is not entitled to claim Hawkinsville Hallway. And under Missouri law, municipal officers generally do not have authority to make arrests outside their jurisdiction. So my question is on the face of the complaint, were these officers acting within their discretionary, the scope of their discretionary authority rather? Well, the short answer is they were outside of their jurisdiction and they had no authority to effect the arrest. There is a policy that unequivocally says that the officers, including Jacob and Malloy, were supposed to remain within their beat. They were supposed to act within their beat. And it's probably for a number of different reasons, none of which we necessarily will get into right now. But I'm not concerned with policy because we've said many times that violation of policy doesn't preclude qualified immunity. So the question is, are they outside of their discretionary authority? Yeah, I think they're outside of their discretionary authority for, yes, the short answer is yes. And if I could go back to the issue of policy, I understand the authority and what it says, but by the same token, ignoring policy goes to, in my opinion, a consciousness of guilt. It goes to a reckless disregard for policy and it also goes to the officer's willingness to engage in pursuit without the requisite ability, without the requisite cause. And when we look at the facts of this case, it goes well beyond just being outside the beat. It goes to the officer's disregard for other officers. How do I get there? Because when they initiated the pursuit, they did not contact dispatch. That's significant because there could be other officers traveling along Airport Road, either in pursuit themselves, either just traveling. I mean, there's pedestrians. If they were to have at least contacted dispatch, other individuals could have been made aware of this pursuit. They didn't. Counselor, before we leave that point, they're St. Louis County officers and this happened in St. Louis County. They were in their jurisdiction, right? They were in the St. Louis County jurisdiction, but they were outside of their beat. They had an assigned beat. Yes, I want to be sure I got it right. Thank you so much for pointing that out. Nevertheless, they consistently lied throughout the investigation. They told the Missouri State Highway Patrol that it was a single-car accident. Single-car accident. Had no involvement. It was their initial response. Isn't the question though objective? I will concede that there is evidence in the record backing up what you're just saying, but isn't the qualified immunity standard here one? What an objective officer. So as odd as it is, don't we set aside those sorts of subjective elements in the case? Yeah, so the analysis of this case does follow along reasonable lines, and I think when we're looking at that reasonableness question, we have to look at, again, the underlying violation, a traffic violation. We have to look at the force that was used, a pit maneuver at 90 miles an hour, and some type of fatality. Is it relevant at all to that reasonableness inquiry of the kind of failure to stop right away? In other words, it may be a traffic citation, the lights go on, driver doesn't stop. Certainly the police are an objective officer could follow and attempt a traffic stop. In other words, when does it become unreasonable here? Yeah, yeah. I think it becomes unreasonable when the officer's first intent was to travel at a high rate of speed to stop a person allegedly running a red light. Counsel, what about Scott versus Haar and the risk to innocent bystanders? Didn't the Supreme Court say it was okay to pursue someone in order to protect innocent bystanders? I think it's okay to pursue when there is an imminent harm or, you know, some type of serious risk to pedestrians or others. In this particular situation, the question comes down to what was the reason, the subjective and the objective reason, for the officers pursuing Mr. Neal? And the only thing that we have to go on is a traffic violation because the officer's stories change multiple times throughout this entire process. One minute they're saying, well, we lost him. We couldn't find him. Well, if you lost the car, why are you traveling at 90 miles per hour? Why would you, when you're passing this wreck, accelerate and then contact dispatch and say, you know what, we're in Hanley Hills and, well, you're right there in Berkeley. It's a long way away. A long way away. And if I could, we had this issue before the court before, but it troubles me dearly to know that officers who are designed, who swore to protect and serve, drove right past two individuals dying on the side of the road. And we're going to afford those individuals immunity when they lied and obscured the investigation? I'm sorry for being a little bit animated, but if I could, if I could reserve the remainder of my time for rebuttal. Thank you. Mr. Plunkett. Yes, Your Honor. Thank you. I, as you saw, was looking furiously at the case that you cited with respect to the Johnson versus Phillips case on the authority question to try and answer your question. The way that I see it, Judge, there's no allegation that he was, my understanding from the evidence is that this began in Kinloch. That's outside their scope, their beat. But there wasn't any evidence or allegation that this actually occurred where the alleged pit maneuver occurred was outside their beat. So, and I'm, I can't find evidence that suggests one or the other, but we don't have evidence to show that's outside of their duties. This is St. Louis County. This is in St. Louis County jurisdiction. These are St. Louis County officers. The law... Former St. Louis County officers. Well, that's true, Judge. One, as you know, has passed away. Right. So how do we determine whether they were acting outside their discretionary authority? Well, Judge, I know that... Is that a matter of Missouri law, perhaps, as to their authority to... I believe under Missouri law, if they're in hot pursuit of someone, they can go outside their beat. But I don't know in this case. Well, they are licensed by the Department of Public Safety and post-licensed. So my understanding is that these officers are with their authority to make an arrest. So long as it's within St. Louis County. I mean, perhaps a broad, even broader than that. So, no, to address that directly, I would say that it was within their authority to do what they did. And this brings up another point, Your Honor. When we say they, you can see that my first point in my brief was that Mark Jacob is being lumped in as the passenger with the driver, Alex. But all we have are the allegations to complaint, counsel. So that doesn't go anywhere, does it? Well, I know that this is Cheeks 2. And on Cheeks 1, it was undisputed that the driver was Alex Malloy. And we can say... You didn't present that argument to district court law, the case argument, did you, counsel? That Mark... I believe I did, Your Honor. I advance an argument that Mark Jacob, as the passenger of the vehicle, cannot be said to have taken any action to engage in any force. Did the district court rule on that? I don't believe the court... I don't recall it either, but I can be corrected. I think you're right, Judge. And I think the court probably did not rule because that would have been advisory at that point, because qualified immunity applied to all. But I don't want the court to look past that, because as a passenger, there's been no case, no clearly established law, that suggests the passenger engages in the use of force when the driver is the one that allegedly conducts a pit maneuver. So that's very, very important. That's why I begin with that in the first point. Turning to my second point in the brief, Judge, this is the qualified immunity point. You have not heard any cases that put this either in a controlling manner, these facts in a controlling manner, or a robust consensus of authority. None to suggest that this is a constitutional violation. However, Judge Benton, as you're aware, in the Moore case, this was something that you addressed with respect to, again, a minor traffic violation. I believe that was failure to register plates. That's Moore-Jones versus Quick. And Judge, you, the court, the Eighth Circuit, and the panel went through a series of other cases in other jurisdictions and found that when there is a pit maneuver performed, there is no clearly established right to be free from the use of a pit maneuver. That's incredibly important because that decision was issued about a month and a half after August 10th of 2018, which is when these circumstances happened in this case. And another thing, when we're talking about clearly established law, it's the burden of plaintiff to show what law was clearly established and that there's a violation. And, Your Honor, as I submit to you, there was no reply brief, and I challenged this very much and offered cases from the Eighth Circuit, from the Supreme Court, Scott versus Harris, that there is no clearly established law. In fact, as Judge Kobus may remember from Christensen versus either Earall or Errol, that was a case where the suspect was traveling in excess of 90 miles per hour. There was a pit maneuver that was conducted, and this was for faulty mechanical failure on the car. That was the allegation. So again, when we talk about a minor traffic offense, that is insignificant to this court's determination in that case. And there, the suspect car hit a pole. And they did not, we say this case a lot with respect to policies and procedures, saying policies and procedures don't tell us if there's a constitutional violation. So those are two significant Eighth Circuit cases which at least make this in the hazy border, and to me show that this is not an unreasonable use of force when we have, as we mentioned in the facts, a red light violation that was observed, speeds in excess of 90 miles per hour in a residential area, and on oral argument in the opening, you heard that there were bystanders nearby in traffic. How much more dangerous under Scott v. Harris does this need to be when you have a 90 mile per hour car going in a 35 mile per hour zone? You're endangering the lives of others, and as you're aware, Justice Scalia had very stern language on public policy that the Supreme Court is loathe to grant such, to find such a constitutional violation, because you'd be incentivizing, I think it mentioned perverse incentives, you'd be incentivizing someone to run from the police. And I think one of the telling points from the Supreme Court that's come, I don't say recently, it's in 2015, but that's in Mullinex. And the quote from Mullinex that I want to read is, the Supreme Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity. So we have Scott v. Harris, the facts from these Eighth Circuit cases of Christensen and Moore-Jones be quick. We have not heard any case with respect to the briefing of the appellant that suggests there is controlling law or robust consensus of authority to show that this was a violation of constitutional rights. Touching briefly on the facts in the record that were mentioned about things that happened after this, those are not pertinent to this court's determination with respect to whether the use of force was excessive or reasonable. You mean in this case they legally could be, right, as all the facts and circumstances of the case are relevant under the Supreme Court's test? Well, after this took place and after it was over, those are not the facts and circumstances that inform the decision to use force. And that's Graham v. Connor, which suggests that the mental intent of the party, of the officer, is not relevant to this. And I kept going, or that goes to the mental state. It doesn't go to the decision at the time to use force. So, you know, I think the important point, too, in Christensen v. Errol, there were allegations that there were no other vehicles or pedestrians present. And in Scott v. Harris, at the time the pit maneuver was conducted, there were no other vehicles or bystanders present. Here, there are. So the dangerousness of traveling at 90 is even more so here than Scott, then Christensen, and then versus Posco, which was cited by Christian in the Fifth Circuit. So, Your Honors, again we turn to this standard that I wanted to highlight to you that it is the burden of the plaintiff to show the don't have it. With respect to the third amended complaint, I'll just point out that there were no allegations that impact this decision that this Court's going to make whatsoever. I know the District Court pointed out one of the changes or the allegations was it was a ram rather than a pit maneuver. Well, I think in Scott v. Harris they reference ramming. To me, that is not a difference worth any kind of significance when it comes to force being used. It's contact between cars. So we're assuming that to be true because we're at the motion dismiss stage with respect to contact between cars. No allegations in the proposed third amended complaint change this whatsoever. So, I will answer any other questions, but if there are none. Seeing none, thank you for the argument. Thank you, Your Honor. Mr. Bent. The clearly established law comes from the Fourth Amendment. At the end of the day, I believe that Mr. Neal should be free of excessive use of force which would include the pit maneuver that was performed. I understand that counsel points to a case, the Moore case, and I think the distinguishing fact from this case and Moore is that the pit maneuver performed in Moore was at a low speed. Once again, if you perform a pit maneuver at the rate of 90 miles per hour, something bad is going to happen. It's again analogous to shooting a loaded weapon in a crowded mall for a shoplifter. It's excessive under any sort of circumstances. With respect to the dismissal, I think it was highly inappropriate to dismiss at the pleading stage. At the end of the day, we should have been afforded an opportunity to conduct discovery so that we could at least have a better understanding. You can make a summary. Make a brief summary because we've had some confusion. Sure, thank you so much. A brief summary will cover it. A brief summary essentially comes down to this. The cases that are cited by counsel are distinguishable from the one at bar and we'd ask that the court would overturn the lower court's decision with respect to the dismissal and the denial for a leave to amend. Thank you, Your Honor. Thank both counsel for the argument. Case 24-2905 is submitted for decision by the court. Ms. Gruffy, please call.